UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ENEKAN EDO,

Plaintiff,

- against -

OFFICER DANIAL RYAN,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-2187 (PKC) (CHK)

PAMELA K. CHEN, United States District Judge:

*Pro se* Plaintiff Enekan Edo filed this 42 U.S.C. § 1983 ("Section 1983") action against Defendant New York City Police Department ("NYPD") Officer Danial Ryan for false arrest, discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, and deprivation of property in connection with his arrest on November 13, 2023. Before the Court is Defendant's motion for summary judgment. For the reasons set forth herein, the Court grants Defendant's motion in full.

## BACKGROUND

### I. Factual Background

On November 13, 2023, at approximately 6 a.m., a woman, hereinafter referred to by her initials, J.T., called 911 to report that Plaintiff Edo was assaulting her. (Def.'s Local Civ. Rule 56.1 Statement, ("Def.'s 56.1"), Dkt. 47-1, ¶¶ 1–5, 12.) J.T. told the operator that she was in the passenger seat of Plaintiff Edo's car when he "snatched" cash that she was counting out of her hands. (*Id.* ¶¶ 2, 9.) While still on the phone with the 911 operator, J.T. yelled that Edo had hit her in the ear. (*Id.* ¶ 4.) The 911 dispatcher reported to the NYPD that Edo had "snatched money out of [J.T.'s] hand, he hit her in the ear and was hitting her," and relayed J.T.'s description of Edo as "male black 30 years old with braids and [in] a blue Dodge SRX" with license plate KYZ5467.

(Def.'s Mot. Summ. J. Ex. C ("911 Radio Communication"), Dkt. 47-6, at 1:00–2:00.) Around the same time, Edo also called 911 allegedly reporting that J.T. "would not move when [Edo] told her to get out of [his] car," and that J.T. was "kicking [Edo] and spitting." (Compl., Dkt. 1, at ECF[1] 9; *see also* Def.'s Mot. Summ. J. Ex. D ("Ryan Body Cam Footage"), Dkt. 47-7, at 9:20–40, 10:55–11:10 (Officer Ryan stating multiple times during the interaction that "Both of you [Edo and J.T.] called").)[2]

At the time of J.T.'s and Edo's separate 911 calls, Officer Ryan was in a patrol car with his partner, NYPD Officer Joseph Celestino. (*See* Def.'s 56.1, Dkt. 47-1, ¶ 7.) Officer Ryan called Edo to determine their location, and Edo told Ryan that J.T. would not leave his car and asked the officers to "please come over here and get this girl out of my car." (Ryan Body Cam Footage, Dkt. 47-7, at 6:30–7:00.)

When Officers Ryan and Celestino arrived at the scene,[3] Ryan spoke with Edo, who said that he was an event promoter and that he was driving J.T. (a dancer) home from an event, when she tried to grab the steering wheel to crash the car, (Def.'s 56.1, Dkt. 47-1, ¶ 8), and began "kicking [Edo] and spitting," (Compl., Dkt. 1, at ECF 9). Edo informed Officer Ryan that he pulled the car over and asked her to get out, but she refused. (Def.'s 56.1, Dkt. 47-1, ¶ 8). Officer Ryan then spoke with J.T., who disputed Edo's version of the event—she stated that while she was

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] It is unclear if the audio of Plaintiff Edo's 911 call was produced during discovery, as it was not submitted to the Court by either party.

[3] Four other unidentified officers also responded to the scene. Two of them arrived about four and a half minutes after Officers Ryan and Celestino did, (*see* Def.'s Mot. Summ. J. Ex. E ("Celestino Body Cam Footage"), Dkt. 47-8, at 8:45, 13:00–35), and the other two arrived about four minutes after that, (*see id.* at 17:30–55). While the other officers were involved in the arrest, they are not defendants in this case and are not mentioned in either party's filings.

in the car counting the money that she had made at the event, Edo snatched the money from her hands. (*Id.* ¶ 9.) J.T. explained to Officer Ryan that she then called 911, and while she was speaking to the dispatcher, Edo punched her on the right side of her face. (Ryan Body Cam Footage, Dkt. 47-7, at 13:50–14:00, 16:10–17:28.) Edo denied this to the officers, stating that J.T. was drunk and had "start[ed] acting crazy" and that he had not hit her. (*Id.* at 11:45–13:45.) Edo was eventually handcuffed and placed under arrest. (Def.'s 56.1, Dkt. 47-1, ¶ 12.)

Plaintiff Edo also alleged in the Complaint that while he was being arrested, Officer Ryan and two other officers whispered to him, "you['re] getting arrested [be]cause you['re] black," quiet enough "so the body camera would not be able to hear them." (Compl., Dkt. 1, at ECF 9.) Plaintiff does not mention this fact in his opposition to summary judgment, (*see generally* Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Dkt. 50), Defendant does not concede this fact, and Plaintiff has not offered any evidence supporting the statement beyond the allegation in his Complaint.[4]

## II. Procedural Background

### A. Construing Plaintiff's Claims

Plaintiff commenced this action on March 20, 2024, bringing Section 1983 claims arising out of his allegations that Defendant Ryan violated his Fourth, Fifth, and Fourteenth Amendment rights.[5] (*See* Compl., Dkt. 1, at ECF 4.) In his summary judgment motion, Defendant characterizes

---

[4] Despite Plaintiff's seeming abandonment of this equal protection claim, *see Kramer v. City of Danbury*, No. 07-CV-1749 (DJS), 2010 WL 11661294, at *4 (D. Conn. Jan. 22, 2010) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citation omitted)), the Court considers it out of an abundance of caution. *See infra* at 16–18.

[5] Plaintiff's Complaint referred to two defendants, Officer Ryan and a "John Doe" defendant. (Compl., Dkt. 1, at ECF 3.) The only mention of "John Doe" is in the Complaint form available to *pro se* plaintiffs in which Plaintiff listed the defendants and included a second defendant as "John Doe" without any further specificity. (*Id.*) Shortly after Plaintiff filed his Complaint, the Court directed the United States Marshals Service to serve Defendant Ryan, but noted that Plaintiff did not include John Doe in his Complaint caption, and it was thus "unclear if

these claims as ones for false arrest and deprivation of property, (Mem. Supp. Def.'s Mot. Summ. J. ("Mot. Summ. J."), Dkt. 47-2, at 3), and Plaintiff does not contest these characterizations in his opposition to Defendant's motion, (*see generally* Pl.'s Opp'n, Dkt. 50). The Court largely construes Plaintiff's claims as those that Defendant identified in his motion for summary judgment, which Plaintiff did not dispute.[6] But the Court also construes Plaintiff's allegation that Defendant told him he was being arrested because of his race, (Compl., Dkt. 1, at ECF 9), as a claim for discrimination under the Fourteenth Amendment's Equal Protection Clause, *see Dash v. Montas*, 612 F.Supp.3d 138, 147–48 (E.D.N.Y. 2020) (construing plaintiff's claim that he was arrested because of racial discrimination as a "an equal protection claim under the Fourteenth Amendment" and separately addressing a false arrest claim); *Wilson v. City of New York*, No. 18-CV-7301 (AMD) (LB), 2020 WL 5709200, at *3–4 (E.D.N.Y. Sep. 24, 2020) (similar), and considers this claim in addition to Plaintiff's false arrest and deprivation of property claims.

---

plaintiff intend[ed] to maintain the action against a John Doe defendant." (Order, Dkt. 7, at 1 n.1.) The record indicates that, in the more than two years since this litigation began, neither party has addressed John Doe's identity or whether he remains subject to Plaintiff's claims, including in the summary judgment briefing. Accordingly, the Court considers any claims against John Doe to be abandoned. *See Kramer*, 2010 WL 11661294, at *5 (treating as abandoned plaintiff's claims where "the [p]laintiff's memorandum in opposition to the motion for summary judgment makes no mention of [John Doe defendants] with respect to any of the claims made in those counts").

[6] In doing so, the Court recognizes that, "even at the summary judgment stage, the submissions of a pro se litigant must be read 'liberally and interpret[ed] . . . to raise the strongest arguments that they suggest.'" *DeBernardo v. Lowe's Home Centers*, No. 19-CV-4968 (DG) (ST), 2022 WL 377962, at *5 (E.D.N.Y. Feb. 8, 2022) (alterations in original) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003)), *aff'd*, No. 22-453, 2023 WL 2291882 (2d Cir. Mar. 1, 2023); *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

### B. Discovery

The parties carried out only limited discovery in this matter. Defendant served his "First Set of Interrogatories and Request for the Production of Documents" on November 29, 2024. (*See* Dkt. 36, at ECF 1.) Plaintiff provided facially deficient interrogatory responses on April 9, 2025, and wrote that he could not provide any of the requested documents. (Pl.'s Answer Interrogs., Dkt. 35, at ECF 1–2.) On May 23, 2025, Defendant requested an extension of the discovery deadline because Plaintiff's responses were "deficient in many regards and did not respond to most of Defendants' Interrogatories nor did they respond to any of Defendants['] requests for production of documents." (Def.'s Mot. Extension Time Complete Disc., Dkt. 39, at ECF 2.) The Court denied this request as Defendant had "waited nearly a month after the close of discovery" to request an extension and was already in receipt of Plaintiff's responses. (05/29/2025 Dkt. Order.) In any event, Plaintiff's participation in discovery was limited to his answers to Defendant's Interrogatories, which are sparse and provide no real insight into his factual contentions. (*See* Pl.'s Answer Interrogs., Dkt. 35.)

### C. Defendant's Motion for Summary Judgment

On November 14, 2025, Defendant moved for summary judgment as to all of Plaintiff's claims. (*See* Def.'s Mot. Summ. J., Dkt. 47). On October 31, 2025, Plaintiff filed his opposition, (*see* Pl.'s Opp'n, Dkt. 50), and on November 14, 2025, Defendant filed his reply in further support of his motion, (*see* Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), Dkt. 51).

### D. Plaintiff's Deficient Rule 56.1 Submission

Local Civil Rule ("Local Rule") 56.1 provides that "any motion for summary judgment under Fed. R. Civ. P. 56 must be accompanied by a separate, short, and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Loc. Civ. R. 56.1(a). An opposition to a motion for summary judgment "must include a

correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party." Loc. Civ. R. 56.1(b).

"[A] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *Brown v. City of New York*, No. 21-CV-4632 (PGG) (SLC), 2023 WL 2908661, at *5 (S.D.N.Y. Jan. 30, 2023) (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d. Cir. 2009)). However, a party's failure to submit a Rule 56.1 counterstatement does not "mandate" that the Court declare the moving party's facts admitted, *Harry v. Rodriguez*, No. 22-CV-3995 (NCM) (SDE), 2026 WL 507854, at *3 (E.D.N.Y. Feb. 24, 2026), as a party's "failure does not relieve [the opposing party] 'of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record,'" *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-CV-2614 (ILG) (RML), 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Therefore, courts have discretion to conduct an independent review of the record, particularly where it is a *pro se* party that has failed to submit a proper Rule 56.1 statement. *See Brown*, 2023 WL 2908661, at *5; *Wade v. Montas*, No. 19-CV-2687 (HG) (AYS), 2023 WL 5510599, at *3 (E.D.N.Y. Aug. 25, 2023).

Here, Plaintiff's Rule 56.1 statement was deficient. While Plaintiff did submit a statement of facts in his opposition to summary judgment, (Pl.'s Opp'n, Dkt. 50, at ECF 2–3), his filings do not contain "correspondingly numbered paragraph[s] . . . responding to[] each numbered paragraph in the statement of the moving party," Loc. Civ. R. 56.1(b), nor references to evidence in the record. Nonetheless, the Court "conduct[ed] an assiduous review of the record" for evidence

upon which to decide the instant motion, using both parties' summary judgment materials, Plaintiff's Complaint, and the body camera footage supplied by Defendant, *cf. Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation omitted).

Based on its independent review, however, the Court finds that numerous claims Plaintiff makes in his Complaint and his opposition to summary judgment are unsupported by the record. Most notably, Plaintiff's claims of the following are all controverted by the body camera footage: (1) that there were "no marks or scratches on [J.T.'s] face," (Pl.'s Opp'n, Dkt. 50, at 3; *contra* Ryan Body Cam Footage, Dkt. 47-4, at 19:10–30 (showing a clear mark on J.T.'s face)); (2) that Defendant "never asked [J.T.] if she wanted to go to the hospital," (Pl.'s Opp'n, Dkt. 50, at 3; *contra* Ryan Body Cam Footage, Dkt. 47-4, at 20:05–15 (Defendant asking J.T. if she wants an ambulance)); (3) that the officers did not take any pictures of J.T.'s injury, (*see* Pl.'s Opp'n, Dkt. 50, at 4–5; *contra* Ryan Body Cam Footage, Dkt. 47-4, at 19:20–25, 20:45–55 (Defendant and another officer taking photos of the injury)); (4) that the officers "saw [J.T.] grabbing [Plaintiff] from inside the car," (Compl., Dkt. 1, at ECF 9; *contra* Ryan Body Cam Footage, Dkt. 47-4, at 8:45–55 (showing that Plaintiff was already out of the car when Defendant arrived on the scene)); and (5) that Officer Ryan "completely disregarded what [Plaintiff] said and told [Plaintiff] that he doesn't care and then grabbed [Plaintiff]," (Compl., Dkt. 1, at ECF 9; *contra* Ryan Body Cam Footage, Dkt. 47-4, at 21:20–21:30 (showing that Defendant did not grab Plaintiff and was not the one who handcuffed him)). "Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." *Holtz*, 258 F.3d at 74. Therefore, the Court disregards the unsupported factual assertions recited above and bases its legal analysis on those facts the Court finds supported by its independent review of the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that

plaintiff's version of facts should be discounted, even on summary judgment, because it was contradicted by video evidence).

## LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates that the submissions of the parties, taken together, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (explaining that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)). Once this burden is met, the burden shifts to the nonmoving party to put forward some evidence establishing a dispute of fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *Pager v. Greater N. Ins. Co.*, No. 24-813-CV, 2025 WL 855846, at *4 (2d Cir. Mar. 19, 2025) (summary order) ("[O]nce the moving party has satisfied its burden, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and instead 'must come forward with specific facts showing that there is a *genuine issue for trial.*'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986))). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the trier of fact could reasonably find for the non-movant." *Solid 21, Inc. v. U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024) (quoting *Sports Auth.,*

*Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). "[I]n reviewing the evidence, the court must resolve all ambiguities in favor of the nonmoving party." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (citing *Anderson*, 477 U.S. at 250).

The Second Circuit "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Gerding v. Ljungren*, No. 23-1115, 2025 WL 3751728, at *1 (2d Cir. Dec. 29, 2025) (summary order) (quoting *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023)). Nevertheless, this liberal construction "is not limitless; 'proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Aura Moody v. Queens Ballpark Co.*, No. 24-CV-6271 (SDE), --- F.Supp.3d ----, 2026 WL 1998584, at *3 (E.D.N.Y. July 10, 2026) (quoting *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)).

## DISCUSSION

### I. Plaintiff's False Arrest Claim

Defendant Ryan moves for summary judgment on Plaintiff Edo's false arrest claim, arguing that there is no genuine dispute of material fact that probable cause existed to arrest Plaintiff for assault, and that even if probable cause did not exist, Defendant is entitled to qualified immunity because *arguable* probable cause existed. (*See* Mot. Summ. J., Dkt. 47-2, at 6–9.)

#### A. Probable Cause

A "[Section] 1983 claim for false arrest derives from [a plaintiff's] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). "In analyzing [Section] 1983 false arrest claims, [courts] look to the law of the state in which the arrest occurred."

*Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (citation omitted). "In New York, to prevail on a false arrest claim, a plaintiff must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (citation omitted). "[T]he existence of probable cause is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 152. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted). Whether probable cause exists is analyzed from an objective perspective and depends on the facts known to the arresting officer and/or other law enforcement officials involved with the investigation at the time of the arrest; the arresting officer's state of mind is irrelevant. *See Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Moreover, "[t]he fact that [a] plaintiff was ultimately acquitted [of the alleged offense] does not mean that the officers did not have probable cause to arrest him." *Brogdon v. City of New York*, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002). As the Second Circuit has explained:

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (alterations omitted) (quoting *Zellner*, 494 F.3d at 368).

The Second Circuit has also repeatedly held that a law enforcement officer does not need to resolve conflicting accounts of an incident or investigate each and every piece of information

given to them before arresting a suspect. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan,* 443 U.S. 137, 145–46 (1979)). "For example, 'absent circumstances that raise doubts as to the victim's veracity,' a victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). While an officer cannot ignore "plainly exculpatory evidence," probable cause can still exist even when an alternative explanation is consistent with the facts, and "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006); *see also Ricciuti*, 124 F.3d at 128 (rejecting argument that probable cause was eliminated by officer's failure to further inquire upon the plaintiff's "loud protestations of innocence").

Plaintiff cannot prevail at trial on his false arrest claim because the record is clear that Defendant had probable cause to arrest Plaintiff. *See Jaegly*, 439 F.3d at 152 ("[T]he existence of probable cause is an absolute defense to a false arrest claim."). Here, there is no material dispute of fact that Defendant had probable cause to arrest Plaintiff on November 13, 2023. The undisputed facts show that Defendant was advised of a crime—assault—by a person who claimed to be the victim—J.T.[7] (*See* Def.'s 56.1, Dkt. 47-1, ¶ 6; 911 Radio Communication, Dkt. 47-6, at 1:00–2:00 (911 dispatcher reporting the alleged assault to the NYPD).) Upon arriving at the scene, Defendant spoke with J.T., who told Defendant that while Plaintiff was driving her home, he had

---

[7] Under New York law, an individual can be guilty of Assault in the Third Degree when, "[w]ith intent to cause physical injury to another person, [they] cause[] such injury to such person or to a third person[.]" N.Y. Penal Law § 120.00.

grabbed cash out of her hand as she was counting it and hit her near her ear. (Ryan Body Cam Footage, Dkt. 47-7, at 13:50–14:00, 16:10–17:15.) While Defendant was speaking to J.T., she showed him a visible scratch on the right side of her face, (*id.* at 19:45–55), consistent with her description to the 911 operator that Plaintiff had "just punched [her] in the face," (Def.'s Mot. Summ. J. Ex. B ("911 Call"), Dkt. 47-5, at 3:55–4:05). Plaintiff and his car matched J.T.'s description,[8] and there was no dispute that he was the individual in the car with her. (*See* Compl., Dkt. 1, at ECF 9–10 (Plaintiff stating that he told J.T. to "get out of [his] car" and told Officer Ryan and the 911 dispatcher that J.T. would not leave "[his] car" multiple times).) Plaintiff offers no evidence suggesting that Defendant was made aware of "doubts as to [J.T.'s] veracity," *Stansbury*, 721 F.3d at 90, other than his uncorroborated claim that she lied about him hitting her, (Pl.'s Opp'n, Dkt. 50, at 3; Ryan Body Cam Footage, Dkt. 47-7, at 9:45–55). The "mere fact that a victim, eyewitness, or informant is reporting criminal activity arising from a domestic dispute does not, by itself, raise a doubt as to the witness's veracity sufficient to undermine the presumption of reliability that officers are permitted to attach to such witnesses." *Jin v. City of New York*, 169 F.4th 373, 383 (2d Cir. 2026). Consequently, Plaintiff has failed to "produce evidence showing the presence of a genuine issue of material fact that would warrant resolution by trial," and thus summary judgment in Defendant's favor is warranted.[9] *See Miller v. Lamanna*, 169 F.4th 118, 122 (2d Cir. 2026) (alterations adopted) (citation omitted)

---

[8] (*Compare* 911 Call, Dkt. 47-5, at 1:20–5:10 (J.T. informing 911 dispatcher that her assailant was a black male, approximately thirty years old who wore his hair braided, and they were inside of a blue Dodge SRX with license plate KYZ5467), *with* Ryan Body Cam Footage, Dkt. 47-7, at 10:11 (showing Plaintiff, a black male wearing his hair braided), *and id.* at 17:32 (showing Plaintiff's vehicle's license plate was KYZ5467).)

[9] In his filings, Plaintiff states that he has a video of the incident proving that he did not hit J.T. (*See, e.g.*, Compl., Dkt. 1, at ECF 9; 03/11/2025 Hr'g Tr., Dkt. 34, at 8–9, 25; Pl.'s Opp'n, Dkt. 50, at 3, 5.) Officer Celestino's body camera footage supports Plaintiff's contention that he showed the video in question to Officer Celestino (not to Defendant), (*see* Celestino Body Cam

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff cites New York Criminal Procedure Law § 140.10 to support his claim that in New York City "a police officer cannot make a warrantless arrest for a misdemeanor that occurred outside their presence," as officers are "generally restricted to making arrests for minor offenses that happen within their jurisdiction or within 100 yards of it." (Pl.'s Opp'n, Dkt. 50, at 4.) But the section Plaintiff relies upon applies these limitations only to arrests for "petty offense[s]." N.Y. Crim. Proc. Law § 140.10(2). Meanwhile, the same provision states that an officer may arrest someone without a warrant for "[a] crime when he or she has reasonable cause to believe that such person has committed such crime, whether in his or her presence or otherwise." N.Y. Crim. Proc. Law § 140.10(1)(b).[10]

---

Footage, Dkt. 47-8, at 13:58–20:57), but, as the body camera footage also reveals, J.T. told Defendant that Plaintiff did not begin recording until after the alleged assault, (Ryan Body Cam Footage, Dkt. 47-7, at 19:00–05). In any event, Plaintiff has not submitted any video footage in support of his summary judgment opposition, and the parties disagree as to whether the video was ever produced during discovery: Plaintiff claims he submitted the video, (3/11/2025 Hr'g Tr., Dkt. 34, at 9, 25), while Defendant says he has not received any video, (Def.'s Reply, Dkt. 51, at 4). Nonetheless, even if Plaintiff had supplied Defendant and the Court with the video, Defendant's failure to examine the video in its entirety—purportedly to see that no hitting had occurred—does not undermine the existence of probable cause. *See, e.g.*, *Alberty v. Hunter*, 144 F.4th 408, 416–17 (2d Cir. 2025) (finding that officers' failure to "further investigate" a video of the incident prompting plaintiff's arrest did not impact probable cause because it "did not show plainly exculpatory evidence . . . nor should the police at the scene have expected it would do so"); *Ricciuti*, 124 F.3d at 128 (holding that an officer does not have to resolve competing accounts of an incident once they have a "reasonable basis for believing there is probable cause"); *Triolo v. Nassau County*, 24 F.4th 98, 107 (2d Cir. 2022) (stating that an officer "had no duty to seek [plainly exculpatory evidence] out."). Furthermore, here, Plaintiff does not dispute the veracity of J.T.'s statements to the officers on the scene—that Plaintiff's video began after the alleged punch—and so the video, no matter what it showed, could not have been plainly exculpatory. (*See* Pl's Opp'n, Dkt. 50, at 3 (admitting that the video shows J.T. "still sitting in the car and not moving the whole time").)

[10] Plaintiff was arrested for Assault in the Third Degree, (*see* Mot. Summ. J., Dkt. 47-2, at 7), which is defined as a class A misdemeanor, N.Y. Penal Law § 120.00, and the definition of "crime" within New York's penal code includes misdemeanors, *id.* § 10.00(6).

Second, Plaintiff argues that Defendant's evidence "is only based on allegations[;] this is why the assault case in the 3rd degree was dismissed and thrown out by the judge." (Pl.'s Opp'n, Dkt. 50, at 7.) But, as noted, courts in this Circuit have repeatedly held that a plaintiff's subsequent acquittal of the offense they were arrested for does not bear on probable cause for arrest. *See*, *e.g.*, *Brogdon*, 200 F. Supp. 2d at 421 ("The fact that plaintiff was ultimately acquitted does not mean that the officers did not have probable cause to arrest him."); *Stansbury*, 721 F.3d at 89 (explaining that courts "must consider [only] those facts available to the officer at the time of the arrest and immediately before it" (alteration in original) (quoting *Panetta*, 460 F.3d at 395)).

Finally, Plaintiff's allegation that Defendant told him, "you['re] getting arrested [be]cause you['re] black," (Compl., Dkt. 1, at ECF 9), does not bear on the probable cause analysis because probable cause is an objective inquiry. *See Harris v. City of New York*, No. 20-CV-0784 (ARR) (PK), 2022 WL 462391, at *3 (E.D.N.Y. Feb. 15, 2022) ("[S]o long as the circumstances known to the officer, when viewed objectively, justify an arrest, the confinement is considered privileged." (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))). The subjective intent of an officer, as evidenced by a racially prejudicial statement he allegedly made to the arrestee, is irrelevant to determining whether that officer had probable cause for the arrest. *See, e.g.*, *Nzegwu v. Friedman*, 605 F. App'x 27, 30 n.1 (2d Cir. 2015) (summary order) ("[The plaintiff's] allegations that [the] [d]efendants arrested him, at least in part, because of his national origin and race, are irrelevant to the legal inquiry: they go to the officers' subjective reason for arresting him, not to the facts before [the] [d]efendants at the time of his arrest."); *cf. Paige v. New York City Police Dep't*, No. 10-CV-3773 (SLT)(LB), 2017 WL 1214425, at *3 (E.D.N.Y. Mar. 31, 2017) ("The Supreme Court has already rejected 'any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved' because

'[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" (alteration in original) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996))), *aff'd sub nom. Paige-El v. Herbert*, 735 F. App'x 753 (2d Cir. 2018).

Because there is no genuine dispute of material fact as to the existence of probable cause for Plaintiff's arrest, Defendant is entitled to summary judgment as to Plaintiff's false arrest claim.

**B. Qualified Immunity**

Even if the probable cause analysis was a close call (which it is not), Defendant is entitled to summary judgment on qualified immunity. A law enforcement officer is entitled to qualified immunity if *arguable* probable cause existed. *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001). "[I]n assessing arguable probable cause, the inquiry is 'whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'" *Jin*, 169 F.4th at 381–82 (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)). If so, the defendant is entitled to qualified immunity and cannot be liable for false arrest. Conversely, summary judgment is inappropriate when "on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact." *Jenkins*, 478 F.3d at 88.

Since the qualified immunity analysis looks to the same facts as considered in deciding if probable cause existed, but presents a somewhat lower bar—*arguable*, rather than *actual*, probable cause—the same facts discussed above would merit qualified immunity for Defendant.[11] Indeed, the Second Circuit recently found arguable probable cause even when the police officers involved

---

[11] *See Stansbury*, 721 F.3d at 89 ("In analyzing arguable probable cause for [the defendant's] qualified immunity defense, we examine the same evidence under the same circumstances and evaluate 'whether it was objectively reasonable for the officer to conclude that probable cause existed.' If an officer had probable cause, he or she also had arguable probable cause and is protected by qualified immunity." (quoting *Jenkins*, 478 F.3d at 87)).

had not spoken to the victim directly and relied instead upon statements from the victim's son recounting the alleged assault. *See Jin*, 169 F.4th at 382 ("[E]ven under [plaintiff's] version of the disputed facts, reasonable officers could disagree as to whether there was probable cause to arrest based upon the reasonably trustworthy information relayed to the [o]fficers by [the victim's son], which was simultaneously corroborated by [the victim] demonstrating the attack and displaying his injuries."). Furthermore, the court found that other parts of the record—the visible injuries and the 911 call report matching the victim's description of the attack—"sufficiently demonstrate[d]" at least arguable probable cause, even if the officers "were not entitled to rely upon any portion of the [victim's] son's explanation of the assault at the scene." *Id*. In light of *Jin*, the Court finds that Defendant Ryan, who *did* speak directly to the victim, saw the victim's injury, and knew of no doubts as to the suspect's identity or the victim's report, had arguable probable cause to arrest Plaintiff. Therefore, even if actual probable cause did not exist, the undisputed facts show that arguable probable cause certainly did, and so Defendant is entitled to qualified immunity as a complete defense to Plaintiff's false arrest claim.

## II. Plaintiff's Equal Protection Claim

Plaintiff also alleges that Defendant told him "you['re] getting arrested [be]cause you['re] black," quiet enough "so the body camera would not be able to hear them," (Compl., Dkt. 1, at ECF 9), which the Court construes as a claim for violation of the Fourteenth Amendment's Equal Protection Clause. Other than Plaintiff's allegation in his Complaint of this singular comment, he has never again mentioned this allegation, any claim arising out of it, or any evidence related to it.

### A. Legal Standard

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000), *overruled on other grounds by Gonzaga v.*

*Doe*, 536 U.S. 273 (2002). To show discriminatory intent, the plaintiff must prove that "'a discriminatory purpose has been a motivating factor' in the challenged action." *Jean v. County of Nassau*, No. 14-CV-1322 (JMA) (AYS), 2020 WL 1244786, at *12 (E.D.N.Y. Mar. 16, 2020) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)). Furthermore, "allegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion.'" *Id.* (quoting *Chandrapaul v. City Univ. of N.Y.*, No 14-CV-0790 (AMD) (CLP), 2016 WL 1611468, at *23 (E.D.N.Y. Apr. 20, 2016); *see also Bradshaw v. City of New York*, No. 17-CV-1199 (AJP), 2017 WL 6060781, at *14 (S.D.N.Y. Dec. 7, 2017) (granting summary judgment to defendants because plaintiff's equal protection claim was "entirely vague" and "wholly speculative").

A plaintiff can allege an equal protection violation under a "selective enforcement" theory or under a "class-of-one" theory. *Poole v. Hawkins*, No. 18-CV-0443 (MKB) (RML), 2021 WL 695119, at *8 (E.D.N.Y. Feb. 23, 2021). To raise a "selective enforcement" claim, a plaintiff must allege that they were treated differently than others similarly situated and that the difference in treatment was the product of "impermissible considerations" like race. *Id.* (quoting *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). To raise a "class-of-one" claim, a plaintiff must allege that they were treated differently than others similarly situated and that the difference in treatment had "no rational basis." *Jordan v. N.Y.C. Bd. of Elections.*, 816 F. App'x 599, 603 (2d Cir. 2020) (summary order) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

**B. Plaintiff Does Not Offer Evidence of an Equal Protection Violation**

Plaintiff's claim that Defendant violated his rights under the Equal Protection Clause cannot survive summary judgment because he has not provided any "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (emphasis omitted) (quoting Fed.

R. Civ. P. 56). Plaintiff's only evidence that Defendant discriminated against him because of his race is the single allegation in the complaint itself; Plaintiff has not mentioned the allegation since filing his complaint. (*See generally* Pl.'s Opp'n, Dkt. 50 (not mentioning this allegation or any discussion of discrimination).) In fact, beyond Defendant's denial of the allegation in his answer to Plaintiff's Complaint, (Def.'s Answer, Dkt. 15, ¶ 13), Defendant also has not addressed the matter, (*see* Mot. Summ. J., Dkt. 47-2; Def.'s Reply, Dkt. 51). Even if Plaintiff had maintained this allegation throughout the litigation, he has not pointed to any similarly situated individual who was treated differently. Plaintiff "thus fails to state an equal protection claim under either a class-of-one or a selective-enforcement theory." *Jordan*, 816 F. App'x at 604.

Lastly, even if Plaintiff's Complaint *had* contained sufficient factual allegations to state an equal protection claim, it still could not be employed on its own to defeat summary judgment because "allegations in an unverified complaint are 'not competent summary judgment evidence.'" *MacDonald v. County of Suffolk*, No. 22-CV-0188 (NJC) (AYS), 2026 WL 1453872, at *15 (E.D.N.Y. May 22, 2026) (quoting *Millenium Tr. Co. v. Trust ex rel. William E. Kassar III*, No. 23-CV-5094 (OEM) (ST), 2025 WL 1017517, at *4 n.3 (E.D.N.Y. Apr. 4, 2025)); *see also Caro Capital, LLC v. Koch*, 653 F.Supp.3d 108, 130 (S.D.N.Y. 2023) ("It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment."). Because Plaintiff has failed to plead sufficient allegations to support this claim and has not provided sufficient evidence to raise a triable issue of fact as to this claim, the Court grants summary judgment to Defendant on Plaintiff's discrimination claim.

## III. Plaintiff's Deprivation of Property Claim

Defendant also moves for summary judgment as to Plaintiff's deprivation of property claim on the grounds that (1) Plaintiff has not offered any evidence of property harms, and (2) even if he had, there is no evidence that Defendant was personally involved in the alleged deprivation. (Mot.

Summ. J., Dkt. 47-2, at 9–11). The Court agrees that Defendant is entitled to summary judgment as to Plaintiff's deprivation of property claim.

**A. Legal Standard**

To succeed on his procedural due process claim under the Fourteenth Amendment for property harm, Plaintiff must prove that Defendant "deprived [him] of a liberty or property interest," and that "the state's existing procedures are 'constitutionally [in]adequate' for protecting that interest." *See Bellin v. McDonald*, 177 F.4th 167, 181 (2d Cir. 2026) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)); *see also Poole*, 2021 WL 695119, at *4 (applying the Fourteenth Amendment procedural due process analysis to property damage that occurred during an arrest). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02-CV-2581 (DC), 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Ams. Choice Veterans Constr. Inc. v. City of New York*, No. 25-1380, 2026 WL 1064508, at *2 (2d Cir. Apr. 20, 2026) (summary order) ("[O]ur precedent . . . squarely holds that 'the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy.'" (second alteration in original) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996))).

It is also well-established that a defendant's individual liability in a Section 1983 suit must be predicated on that defendant's "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) ("[T]he plaintiff must directly plead and prove that 'each

Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))); *Ahmad v. New York City*, No. 23-CV-7957 (RER) (CLP), 2024 WL 245310, at *3 (E.D.N.Y. Jan. 23, 2024) (dismissing plaintiff's Section 1983 claim because he failed to show that the individual officer defendants had any personal involvement in the alleged violations).

### B. Plaintiff Does Not Provide Evidence of Property Damage and Defendant Was Not Personally Involved in Moving the Vehicle

Plaintiff's deprivation of property claim against Defendant fails as a matter of law because the record shows no evidence of any damage to Plaintiff's car and no evidence that Defendant was personally involved in moving Plaintiff's car.

In his complaint, Plaintiff states that his car was left on the side of the road when he was arrested; and that when his father picked it up, "$1500 [was] missing, [a] seatbelt buckle was broken off, [his] back left tail light was broken, and the lower front left side of [his] car [was] busted." (*See* Compl., Dkt. 1, at ECF 9–10). He further alleges that an auto body shop assessed his damage at $20,000. (*Id.* at ECF 10.) In his response to Defendant's motion for summary judgment, Plaintiff does not address Defendant's arguments as to his property claim, nor does he mention the damage to his car that he alleged in his Complaint. (*See generally* Pl.'s Opp'n, Dkt. 50.) Even construing these claims liberally, as asserting a claim of deprivation under the Fourteenth Amendment, and considering this claim in spite of Plaintiff's abandonment of it,[12] there is no evidence of property harm—*i.e.*, damage to the car or missing cash—occurring. On the contrary, the undisputed evidence shows that an officer parked Plaintiff's car on the side of the

[12] *See Jackson v. Fed. Express*, 766 F.3d 189, 195–96 (2d Cir. 2014) (explaining that courts should still examine the "legal validity" of a motion for summary judgment when a *pro se* plaintiff provides only a partial response to the motion).

street, locked it, (*see* Celestino Body Cam Footage, Dkt. 47-8, at 24:00–26:05), and went back to double-check that it was locked, (*id.* at 27:10–20). At no point during the body camera footage does any officer remove any cash from Plaintiff's car or damage the car in any way. Plaintiff's bare allegations of property damage and missing cash, unsupported by any evidence whatsoever, are insufficient to survive a motion for summary judgment as to his deprivation of property claim. Moreover, even if Plaintiff had supported his allegations of property harm with sufficient evidence, there is no evidence to suggest that Defendant Ryan was personally involved sufficient to make him liable for the alleged harms. The undisputed evidence shows that it was Officer Celestino, not Defendant, who parked and secured Plaintiff's car. (*See id.* at 24:00–26:00.)[13]

Finally, *even if* all of the above elements were satisfied, Plaintiff does not allege that his alleged deprivation was due to an established state procedure, but rather alleges the deprivation was due to an individual officer. "[W]hen a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (second alteration in original)

[13] Even if Plaintiff's theory was that Defendant Ryan left the car susceptible to damage by an unknown third party, such a substantive due process claim would still fail. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). And although state officers can be held liable for not protecting individuals from private violence when they "assist in creating or increasing the danger that the victim faced at the hands of a third party," *Purvis v. County of Suffolk*, No. 23-CV-0445 (DLI) (AYS), 2024 WL 5007434, at *4 (E.D.N.Y. Dec. 6, 2024) (quoting *Matican v. City of New York*, 524 F.3d 151, 157 (2d Cir. 2008)), Plaintiff cannot meet this high bar, *see Hespeler v. Town of Ledyard*, No. 07-CV-0801 (CFD), 2009 WL 3128536, at *3 (D. Conn. Sept. 28, 2009) ("Decisions of the District Courts in the Second Circuit have typically required 'affirmative government conduct . . . in which the government actor has done something to aid and abet the private wrongdoer, or to otherwise encourage the wrongdoer to undertake violent or risky behavior." (citation omitted)). Here, the undisputed evidence shows that the officers parked the car out of the way of traffic, and locked it, and thus took no action to encourage third-party damage.

(quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). Here, adequate remedies—including a state-law claim for conversion or a court of claims action pursuant to state regulation, *see Palmer v. City of New York*, 564 F. Supp. 3d 221, 249 (E.D.N.Y. 2021) (collecting cases)—were available to Plaintiff and so he has no viable procedural due process claim. *See, e.g.*, *Wahid v. Mogelnicki*, 406 F.Supp.3d 247, 249–50 (E.D.N.Y. 2017) (dismissing plaintiff's deprivation of property claim given New York's adequate post-deprivation remedies); *Alloul v. City of New York*, No. 09-CV-7726 (JSR) (FM), 2010 WL 5297215, at *1–2, *6 (S.D.N.Y. Dec. 21, 2010) (dismissing plaintiff's deprivation of property interest claim based on the towing and subsequent destruction of plaintiff's car because plaintiff could have brought a state court action against those responsible on such theories as negligence or conversion).

**CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted. Plaintiff's claims are dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 23, 2026
Brooklyn, New York